**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>ANGELINO TIGREROS,<br><br>    Debtor. | Case No. 19-17665-mdc<br><br>Chapter 13 |
| ANGELINO TIGREROS,<br><br>    Plaintiffs,<br><br>v.<br><br>ORIGEN CAPITAL INVESTMENTS III, LLC,<br><br>    Defendant. | Adv. Proc. No. 21-00015-MDC |

**MEMORANDUM OF LAW IN SUPPORT OF VALUATION TIMING AND METHODS UNDER 11 U.S.C. SECTIONS 506(a) and 522(f)**

The Debtor, Angelino Tigreros (the "Debtor"), by and through its undersigned counsel, files this Memorandum of Law in Support of Valuation and Timing Methods to be facilitated under 11 U.S.C. Sections 506(a) and 522(f), and in support thereof states as follows:

**PROCEDURAL AND FACTUAL BACKGROUND**

1. The underlying Chapter 13 bankruptcy case was commenced by the filing of a voluntary petition with the Clerk of this Court on December 9, 2019.

2. An Order for Relief under the provisions of Chapter 13 of Title 11 of the United States Code was duly entered by this Court upon the filing of the petition. This order served to invoke the provisions of Section 362(a) of Title 11 of the United States

Code.

3. The 341(a) meeting of creditors was held on May 8, 2020. A chapter 13 plan was filed with the court and subsequently amended. Confirmation hearings have been routinely continued pending the unresolved issue relating to the value if any, of Defendant's judgment lien on the Debtors' real property.

4. Upon information and belief, the Defendant is successor-in-interest to Citizens' Bank of Pennsylvania ("Citizens"), the original lender of the underlying loan that resulted in the Defendant's judgment lien against the Debtor's property. According to the Defendant's Proof of Claim #5-1, Citizens assigned the underlying loan documents to the Defendant in April 2016.

5. The Debtor's property is located at 534-36 West Rockland Street, Philadelphia, Pennsylvania, (the "Property").

6. The Debtor alleges that at the time he filed his bankruptcy petition the value of his interest in his Property was $60,000. This fact is in dispute since the appraisal attached as **Exhibit "A,"** lists the value of the Debtor's real property at $45,000 as of April 2021 (the "Appraisal").

7. The Debtor's interest in the real estate is subject to a first lien arising out of a first mortgage in favor of Citizens in the amount of approximately, $34,004.61. *See* Proof of Claim #4-1. Debtor's interest in his residential real estate is subject to second and third liens held by the City of Philadelphia and by the PA Department of Revenue.

8. The Debtor is also entitled to utilize the federal bankruptcy homestead exemption in the amount of $27, 900, which goes into effect tomorrow, April 1, 2022.

9. Using the most recent valuation date of April, 2021 of $45,000 and after subtracting

the federal exemption amount, the Citizens mortgage and the secured liens held by the City of Philadelphia and the PA Department of Revenue, the Defendant's judgment lien is completely unsecured, and the judgment should be void.

10. Therefore, any timely filed claim of the Defendant is allowable only as an unsecured claim in the Debtors' Chapter 13 Plan.  To the extent that no such claim was filed or is later deemed as not allowed, the Defendant has no claim against this estate.

11. The Court held a hearing on the valuation of the debtor's property for the purpose of stripping off the Defendant's judicial lien held against the Debtor's property.

## ARGUMENT
### I. TIMING OF THE VALUATION OF THE PROPERTY IS THE DATE OF THE MOST RECENT APPRAISAL, APRIL 2021

At the evidentiary held in this adversary proceeding on March 1, 2022, the parties did not stipulate as to the correct timing of the valuation of the Debtor's Property.  However, in *Verratti v. PNC Bank*, 517, B.R. 564, 567 (*In re Verratti*, E.D. Pa. Bankr. 2014), this Court, citing to *In re McDonald*, 205 F.3d 606, 615 (3d Cir. 2000), observed that "there is no clear consensus in the case law as to the particular date which should control for valuation purposes." *Verratti,* Id.  The court noted that in *In re McDonald*, the Third Circuit noted that Section 506(a) states that "the value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property…or on a plan affecting the subject creditor's interest in same…." Id.  The *Verratti* court concluded that since the debtor's plan had not yet been confirmed and there was no evidence to conclude that real estate values had changed significantly in the two years while the case was pending, the court would use the later appraisal date rather than the value stated in the debtor's petition and schedules. Id. The later appraisal date used by

the Verratti court was the creditor's appraisal, yet the court there still held that based on the creditor's own appraisal, there was no excess equity to secure the creditor's secured claim in that case.

Additionally, in *Miller v. Citibank* 558 B.R. 146 (*In re Bryan T. Miller*, E.D. Pa. Bankr. 2014), this court agreed with the court in *McDonald* and stressed that "the date on which a party should be valued for the purposes of Section 506(d) is at least uncertain." *Miller,* at 155 fn. 12.  In *Miller*, the court used a valuation date as of the date of the debtor's second appraisal completed after the petition date and after significant water damage had occurred.  Simplifying this matter for the *Miller* court, the secured creditor submitted its appraisal as of the same day as the debtor's second appraisal.

In this case, the Debtor's appraisal was completed in April 2021 in preparation of the filing of this adversary proceeding.  The Defendant prepared no appraisal of the Property but instead submitted a comparable sales report prepared less than one week prior to the evidentiary hearing held on March 1, 2022.   While the issues of date of valuation was briefly discussed at the beginning of the evidentiary hearing in this case, the parties did not stipulate as to a valuation date and the Debtor respectfully requests that based on the above case law, this court accept the valuation date as of the date of the Debtor's appraisal of April 2021.

## II.    DEBTOR'S CERTIFIED APPRAISAL DATED APRIL 2021 SHOULD BE THE ONLY METHOD USED TO DETERMINE THE VALUE OF THE DEBTOR'S PROPERTY

The Debtor's appraisal prepared by Gerald W. Gibbs, a certified residential appraiser values the Debtor's Property at $45,000.   Mr. Gibbs based his appraisal on not just the

most recent comparable sales in the area surrounding the Property, but also based on the interior and exterior of the Property. Defendant's valuation method consisted merely of a "drive-by" of the Property without taking into account the interior or rear exterior of the Property, also known as a Comparative Market Analysis (a "CMA"). In the *Miller* case, the court compared two competing appraisals – not an appraisal and a CMA. While the *Miller* court had the advantage of two certified appraisals, it focused on the location of the property and any renovations made to the property or to any of the comparable sales used by both appraisers. The testimony of the secured creditor's appraiser stressed the importance of location and noted that the debtor's comparable sales were located farther away from the debtor's property nor did the debtor's appraisal consider the added value of renovations to the debtor's property. *Id.* at 155, 156. In this instant case, Defendant's comparable sales were located a mile in distance from the Debtor's Property and in more desirable neighborhoods. Also, Debtor's appraiser only looked at comparable sale prices of properties and not properties that may have been "flipped" or renovated after the date of Debtor's appraisal on April 20, 2021. Defendant's appraiser had the benefit of looking at homes that were recorded after April 2021 and may have used properties that had been bought and renovated after April 2021.

    Defendant's expert never entered the Debtor's Property and never examined the rear exterior of the Debtor's property. In *Verratti,* the court found that the debtor's appraiser who completed an interior inspection of the property, offered "considerably more evidence in support of his opinion." There, the debtor's appraiser corroborated the deficiencies with the property with the photographs attached to the appraisal. *Verratti* at 571. Judge Raslavich concluded in *Verratti* that the debtor's expert of the condition of

the property and the comparable sales were a "better gauge of what a willing, arms-length buyer would pay for the [p]roperty."  Id. at 572.  See also *Beneficial Consumer Discount Company v. Erb,* 2011 WL 2600647 (*In re Erb,* M.D. Pa. Bankr, 2011) (Court found that creditor's appraisal was "significantly" flawed for failing to consider the interior condition of the property. *Erb* at *4).  Defendant here also repeatedly cites to the City of Philadelphia's (the "City") assessed value for the Property.  Any resident of Philadelphia knows that the City's assessed values are flawed.  See "*Philly won't reassess properties until next year, but some already worried homeowners will be 'blindsided.'*" Philadelphia Inquirer, February 21, 2021.[1]

In this case, Debtor's appraiser completed a thorough inspection of both the interior and exterior – including the rear exterior of the Property.  Defendant's expert merely drove by the Property without any inspection of the interior.  Defendant's expert used comparable sales that were not in the same neighborhood as Debtor's Property.  Using the hypothetical set forth in *Verratti*, an arms-length purchase of the Debtor's Property here would show that the Property, taken "as-is" would at best bring a sales price of $45,000.  A hypothetical arms-length transaction would also require an interior inspection of the Debtor's Property as well as an actual certified appraisal prior to closing on the Property.

It is clear from the evidence set forth in Debtor's appraisal that the quality of both the interior and exterior of the Property is in total disrepair.  Any potential purchaser of the

---

[1] "Property assessments and the resulting tax bills have long been sources of confusion and complaints. Rising home prices in gentrifying neighborhoods resulted in steep increases for longtime homeowners in the last few years, and a 2018 Inquirer analysis **showed that lower-priced properties tend to be over assessed,** while owners of higher-priced properties are more likely to be paying less than their fair share in taxes." Emphasis added.

Property would need to completely "gut" and fully renovate the Property. Only then, would Defendant's valuation of the Property come anywhere near its valuation number of $120,000.

**WHEREFORE,** the Debtor respectfully sets forth based on the above arguments that the Debtor's Property has no excess equity in order to secure the judgment lien of the Defendant.

Respectfully submitted:

CENTER CITY LAW OFFICES, LLC

BY:  /s/Maggie S. Soboleski
MAGGIE S. SOBOLESKI
Identification No. 88268
2705 Bainbridge Street
Philadelphia, PA  19146
Tel: (215)620-2132
*Counsel to the Debtor*

March 29, 2022