**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>ANGELINO TIGREROS,<br><br>    Debtor. | Case No. 19-17665-MDC<br><br>Chapter 13 |
| ANGELINO TIGREROS,<br><br>    Plaintiffs,<br><br>v.<br><br>ORIGEN CAPITAL INVESTMENTS III, LLC,<br><br>    Defendant. | Adv. Proc. No. 21-00015-MDC |

# <u>M E M O R A N D U M</u>

## I.    INTRODUCTION

Angelino Tigreros (the "Debtor"), filed this adversary proceeding seeking a determination pursuant to 11 U.S.C. Sections 506(a) and 522(f) that, based upon the valuation of his primary residence, located at 534-36 West Rockland in Philadelphia, Pennsylvania (the "Property") and liens thereon, there is no excess equity to secure the judgment lien of Origen Capital Investments VI, LLC (the "Defendant").

Resolution of this adversary proceeding requires the Court to answer three (3) questions:

1. Whether the Property must be valued as of the petition date or whether the Court may choose another date to fix the value?

2. What is the value of the Property?

3. And, whether there is any equity securing the Defendant's judgment lien after the

Debtor's $25,150.00 exemption and superior liens on the Property are accounted for?

The Court concludes the Bankruptcy Code does not obligate it to value the Property as of the petition date. The Court further concludes the Property is worth $46,200.00. Finally, the Court has determined that there is no equity remaining to secure the Defendant's judgment lien.[1]

## II.    FACTS AND PROCEDURAL BACKGROUND

The Debtor commenced the underlying Chapter 13 bankruptcy case by filing a voluntary petition on December 9, 2019 (Case No. 19-17655). The 341(a) meeting of creditors was held on May 8, 2020. Several proposed chapter 13 plans were filed with the Court, but a plan has not been confirmed. The Debtor commenced this adversary proceeding (Case No. 21-AP-00015) by filing a complaint against the Defendant on February 21, 2021, seeking relief under 11 U.S.C. §1322(b)(2).[2]

At the time he filed the bankruptcy case, the Debtor valued the Property at $60,000.00. The Debtor purchased the property in 2004 for $20,000.00. Exhibit P-1 at 15.

Defendant is the successor-in-interest to Citizens Bank of Pennsylvania ("Citizens"), the original lender of the underlying loan that resulted in the Defendant's judgment lien against the Property. According to the Defendant's Proof of Claim #5-1, Citizens assigned the underlying loan documents to the Defendant in April 2016. Proof of Claim #5-1. The Defendant obtained a

---

[1] The Court's findings and conclusions, as detailed in the following sections, are based on the credibility and demeanor of the trial witnesses, the plausibility of their testimony, the existence of corroborating circumstantial, testimonial, or documentary evidence, the totality of the evidentiary record presented at the trial and the Court's consideration of the parties' post-trial submissions.

[2] Following trial, the parties filed a stipulation agreeing to go forward under 11 U.S.C. §§506(a) and 522(f). The Debtor withdrew his request for relief pursuant to 11 U.S.C. §1332, and the Defendant waived the defense of the chapter 13 anti-modification clause, 11 U.S.C. §1322(b)(2). *See* Post-Trial Stipulation (Case No. 21-AP-00015 Docket No. 38).

2

default judgment against the Debtor in the amount of $57,133.08 plus interest and unpaid charges dated June 9, 2017, in the Court of Common Pleas of Philadelphia. At the time of the filing of the petition the judgment had increased to $71,390.74. Addendum to Proof Claim #5-1 at 1-2.

On March 1, 2022, the Court held and concluded a trial on the valuation of the Property at which the Court heard the testimony of the Debtor's certified real estate appraiser, Gerald W. Gibbs, and the Defendant's real estate broker, Keith Chennault.

The Property is a 1,748 sq./ft twin home with four bedrooms and two baths on a double lot (*i.e.*, the Property is forty feet wide). There is a three-car garage, constructed mostly of tin, that is accessible by an eight foot wide partially paved and partially unpaved driveway. Exhibit P-1. The Property is located in an urban residential neighborhood, but there is a commercial use across the street. *Id*. The Property is located on the border of the Logan and Olney neighborhoods and is approximately two blocks from houses that were demolished due to sinking land.

The Debtor's real estate appraiser, Mr. Gibbs, valued the property at $45,000.00 in April 2021. *Id*. Mr. Gibbs, after inspecting both the interior and exterior of the Property, based his valuation on the size of the lot, the size of the dwelling, the location, and the deteriorated condition of the dwelling.

During his inspection of the Property, Mr. Gibbs observed extensive deferred maintenance issues including rotting wooden windows, missing/boarded up windows, bricks eroding, water damaged floors, bathroom leaks, black mold from a roof leak, missing siding, missing roof capping, compromised basement access, holes in the masonry walls in the basement, foundation wall cracks, and an inoperable heating system. Exhibit P-1 at 4-9. The

Property is heated using space heaters and electric base boards and lacks central air conditioning. *Id*. at 2. The pictures included in Mr. Gibbs' appraisal report confirm the extensive deterioration of various portions of the Property.

Mr. Gibbs opined the Property is in poor/fair condition for the neighborhood in which it is located. *Id.* Mr. Gibbs compared the Property to six comparable properties located within less than .45 miles north or northwest of the Property and of similar age and size as the Property. Exhibit P-1 at 2-3. Mr. Gibbs' comparable properties were in either fair/average condition or superior condition for the neighborhood. Mr. Gibbs appraised the comparable properties at values between $36,200.00 and $133,310.00. *Id*.

By contrast, the Defendant's real estate broker, Mr. Chennault, used a comparative market analysis to opine on the Property's value. He testified at trial that the Property, if sold for investment purposes, would sell for between $105,000.00 and $120,000.00. Mr. Chennault's comparable sales analysis, dated May 17, 2021, also proposed a market value of $105,000.00 and $120,000.00. Exhibit D-10 at 23.

Mr. Chennault observed the Property from the street and used market value, nearby sales, location, condition, lot size, and dwelling size to determine his proposed market value. In determining the proposed market value, Mr. Chennault concluded the availability of off-street parking was valuable and that the lack of housing inventory available to investors also added to the Property's value.

Mr. Chennault's eleven comparable sales were in the same general area as the Property, although three properties were located across Roosevelt Boulevard and some properties had been renovated prior to sale. Exhibit D-10 at 1-2. The comparable properties sold for between $30,000.00 and $265,000.00. The two most expensive properties that sold for $265,000.00 and

$250,000.00 are located across Roosevelt Boulevard. *Id*.

On March 15, 2022, the parties filed a Post-Trial Stipulation (Case No. 21-AP-00015 Docket No. 38) that stipulated to the following facts regarding the liens senior to the Defendant's lien:

   a. Citizens holds a mortgage lien in the amount of $34,284.61 (Proof of Claim #4-1);

   b. The City of Philadelphia holds a lien in the amount of $201.27 (Proof of Claim #7-1);

   c. The City of Philadelphia holds a lien in the amount of $1,200.00 (Proof of Claim #8-2); and

   d. The Commonwealth of Pennsylvania holds a lien in the amount of $1,200.00 (Proof of Claim #1-1).

The senior liens total: $36,885.88. The parties also stipulated that the Debtor claims a homestead exemption of $25,150.00 pursuant to 11 U.S.C. §522(d)(1). The parties did not stipulate as to the correct timing of the valuation of the Property.

The parties filed post-trial briefs on March 29, 2022. The Debtor seeks a determination that the appraisal performed in April 2021 was valid when performed, the value of the Property is $45,000.00, and a conclusion that there is no equity in the Property to secure the Defendant's judgement lien.

The Defendant seeks a determination that the Debtor failed to carry his burden to prove the value of the Property because the appraisal was not conducted as of the date of the bankruptcy petition. Alternatively, the Defendant asks the Court to conclude that the value of the property exceeds the sum of the liens and the Debtor's exemption.

5

### III. DISCUSSION

#### A. The Law

##### 1. 11 U.S.C. §506

Section 506(a)(1) provides, in pertinent part, that a creditor's allowed claim that is secured by a lien on estate property:

> is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Accordingly, pursuant to Section 506(a), a court has discretion to value the property looking to the "purpose of the valuation," and how the property is to be used. *In re Robinson*, 2015 WL 5309513, at *3 (Bankr. D.N.H. Sep. 10, 2015). These determinations are to be made "in conjunction with" any hearing relating to the use of the property or a plan that will affect a "creditor's interest" in the property. *See* 11 U.S.C. §506(a).

As observed by the Third Circuit Court of Appeals, "[t]here is no clear consensus" regarding which date controls for valuation purposes. *In re McDonald*, 205 F.3d 606, 615 (3d Cir. 2000). *See also In re Houston Reg'l Sports Network LP*, 886 F.3d 523, 528 (5th Cir. 2018) ("Courts have the flexibility to select the valuation date so long as the bankruptcy court takes into account the purpose of the valuation and the proposed use or disposition of the collateral at issue.").

Courts have chosen a number of different points in time to determine the secured status of a claim: (1) the petition date, (2) the date of valuation hearing plan, (3) the plan confirmation date, and (4) the plan effective date. *See In re Wood*, 190 B.R. 788, 790 (Bankr. M.D. Pa. 1996) (collecting cases taking various positions). *See also* 4 Collier on Bankruptcy

¶506.03 (16th ed. 2023) (courts disagree whether, for purposes of lien avoidance under section 506(d), value should be determined as of the time of the confirmation of a plan or as of the petition date); 134 A.L.R. Fed. 439, "Time and Method of Valuation under 11 U.S.C.A. § 506," Part III "Particular Views as to Relevant Time for Valuation." The chosen date often depends on the purpose of the valuation, *e.g.,* the treatment of a claim in a chapter 11 plan, whether a creditor is entitled to post-petition interest under section 506(b), or whether a secured claim may be modified in a chapter 11 plan.

In *Wood*, the court examined the language of Section 506(a), its legislative history, and case law. The *Wood* court concluded the date of valuation should not be restricted to any one date but rather should involve some flexibility on the part of the court and consideration of various equitable factors. *In re Wood*, 190 B.R. at 794-95 (discussing eleven (11) factors). *See also In re Aubain*, 296 B.R. 624, 636-37 (Bankr. E.D.N.Y. 2003) (adopting a flexible approach to choosing a valuation date); *In re Johnson*, 165 B.R. 524, 528 (S.D. Ga. 1994) ("The legislative history of § 506 unequivocally indicates that subsection (a) is intended to accommodate a flexible approach to valuations rather than a single, fixed method.") (*citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) pp. 356-57, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6312).

The Third Circuit has a burden-shifting framework governing the valuation of collateral to determine the extent to which a creditor's claims are secured pursuant to Section 506(a). *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012). A properly filed proof of claim creates a presumption of the validity and amount of the claim. *Id*. at 140. Further, a party seeking to value and bifurcate secured claims under Section 506 carries the burden of demonstrating the value of the claims and collateral. *Id*. at 140, 145.

7

### 2. 11 U.S.C. §522

Section 522(f) permits a debtor to avoid the fixing of a judicial lien on his property to the extent that such lien impairs an exemption to which the debtor would have been entitled under §522(b). Under §522(d)(1), a debtor's interest in real property that is used as his residence is subject to exemption not to exceed $25,150.00. 11 U.S.C. §522(d)(1).[3]

Pursuant to §522(f)(2)(A) a debtor's exemption is determined as follows:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i)    the lien;
>
> (ii)    all other liens on the property; and
>
> (iii)    the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. §522(f)(2)(A).

### B. The Parties' Arguments

The Debtor seeks to avoid a judgment lien in favor of the Defendant in the amount of $71,390.74 pursuant to Section 522(f) of the Bankruptcy Code because the judicial lien impairs an exemption to which the debtor is entitled. The Debtor argues the Third Circuit has held "there is no clear consensus in the case law as to the particular date which should control for valuation purposes." *In re Verratti*, 517 B.R. 564, 567 (Bankr. E.D. Pa. 2014) (citing *In re McDonald*, 205 F.3d at 615). Thus, according to the Debtor, this Court has discretion to choose a date other than the petition date to fix the value of the Property.

---

[3] The exemption under Section 522(d)(1) was increased from $25,150.00 to $27,900.00 effective for bankruptcy cases filed after April 1, 2022. The Debtor's case was filed on February 24, 2021, prior to the increase in the exemption amount.

Case 21-00015-mdc    Doc 48    Filed 04/30/23    Entered 05/03/23 11:11:05    Desc Main
Document      Page 9 of 14

With regard to the value of the Property, the Debtor urges the Court to accept the $45,000.00 appraisal conducted by Mr. Gibbs. The Debtor argues Mr. Gibbs' appraisal is more comprehensive as it included both and interior and exterior inspection of the Property. The Debtor also notes Mr. Gibbs comparable properties were located closer to the Property and in a less desirable neighborhood than the Defendant's comparable properties.

The Defendant counters that the Debtor has the burden of proving the value of the Property as of the petition date because under Section 522(a) "value" means "fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.". Defendant's Post-Trial Brief at 3-4 (collecting cases). The Defendant asserts the Debtor has failed to prove his case because the Debtor did not submit an appraisal evidencing the value of the Property as of the petition date.

The Defendant further asserts the Debtor has failed to carry his burden because he has not submitted any evidence establishing the validity of the senior liens, the nature of the liens, the perfection or attachment of the liens, or evidence that the liens remained outstanding or and are not otherwise avoidable or defective. Defendant's Post-Trial Brief at 4-5.

The Defendant also contends the Court should not give any weight to Mr. Gibbs' testimony because the appraisal did not add value based on the existence of a driveway, off-street parking, and the Property's status as a double lot. The Defendant also faults Mr. Gibbs for not updating the sale price of the 4804 Warnock Street comparable from its 2020 sale price of $58,000.00 to a more current, April 8, 2021, sale price of $207,000.00.

C. **Analysis**

1. **Must the Property be valued as of the petition date?**

As the Court noted above, the Court of Appeals has not held that property *must* be

9

valued as of the petition date. The Court disagrees with the Defendant that it is required to value the Property as of the petition date. Rather, the Court takes a flexible approach to fix an appropriate valuation date.

Debtor's case has been pending since December 2019 and the valuation hearing was not held until March 2022. It does not seem extraordinary to the Court that the Debtor did not have an appraisal performed in December 2019. As the Debtor's case developed, counsel filed the adversary proceeding complaint on February 24, 2021, and then commissioned a certified real estate appraisal completed in April 2021. Defendant did not submit a comparative market analysis until February 2022.

The Defendant's failure to submit a valuation based on December 2019 conditions undercuts its argument that the Debtor can only have carried his burden by obtaining a December 2019 valuation. Further, the Defendant has failed to explain why the petition date is a better representation of the value of the Property than either the Debtor's 2021 appraisal or Defendant's own 2022 comparative market analysis or whether a different appraisal date would materially change the value analysis.

Valuing the Property as of December 2019 would not account for such factors as changes in the real estate market, changes in neighborhood conditions, and any deterioration or repairs made to the property since December 2019. Further, while a real estate broker could conceivably create a December 2019 comparative market analysis based upon historical data, a certified real estate appraisal is based upon conditions observed at a specific time and it is impossible to turn back the clock and value the Property as of that date.

The Court concludes that based on fairness, efficiency of case administration, equitable considerations, and recognition of the pandemic conditions that existed while the

Debtor's bankruptcy case and adversary proceeding were pending that a valuation date other than the petition date is appropriate.

The Court also rejects the Defendant's argument that the Debtor has failed to carry his burden because he did not establish the validity of the senior liens. The senior liens on the Debtor's property held by Citizens (Proof of Claim #4-1), the two liens held by the City of Philadelphia (Proof of Claim #'s 7-1, 8-2), and the lien held by the Commonwealth (Proof of Claim #1-1) are evidenced by duly filed proofs of claim, and the Debtor has not filed objections thereto. The parties do not dispute that the claims are allowed claims and presumptively valid. *See* 11 U.S.C. §502(a)-(b); *In re Heritage Highgate*, 679 F.3d at 140.

### 2. What is the value of the property?

The parties used two different methods of valuation i.e., a real estate appraisal and a comparative market analysis.[4] The Debtor's appraiser valued the Property at $45,000.00 and the Defendant's real estate broker valued the Property between $105,000.00 and $120,000.00.

In this case, the Debtor's appraiser valued the property based on its age, condition, location, and construction costs. The Defendant's real estate broker valued the property based on market conditions for real estate that would be acquired by real estate investors for the purposes of rehabilitation and then resale. Critical to the Court's resolution of the Property's value, however, is the express language of §506(a) of the Bankruptcy Code, which as noted *supra,* provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C.

---

[4] The failure of the parties to use the same valuation method has made the Court's analysis more difficult as it was not comparing apples to apples. The Court hopes that in the future the parties would cooperate with each other to simplify the valuation process.

§506(a). The Defendant submitted a valuation that is based on market conditions for real estate investment. There was no testimony or evidence at trial that the Property is or will be renovated and resold as an investment property. Rather, it is the Debtor's home, and needs to be valued guided by such use. The Court therefore gives no weight to the Defendant's valuation of the Property, since it was not determined in light of the actual use of the Property. Mr. Gibbs' valuation, on the other hand, did account for the actual use, including consideration of the distressed condition of the Property and the effect such condition had on its value in light of its use as the Debtor's home.

The Court therefore evaluates Mr. Gibbs' valuation. In evaluating the resulting analysis, a court may consider the experience, accuracy, and general credibility of the valuation witnesses. *In re Lepage*, 2011 WL 1884034, at *4 (E.D.N.Y. May 18, 2011); *In re Aziz*, 2011 WL 5836895, at *4 (Bankr. S.D.N.Y. Nov. 18, 2011). Additionally, because the appraisal process involves inherently subjective elements "[a] court is not bound by values determined by appraisals [and] may form its own opinion as the value of the subject property." *In re Karakas*, 2007 WL 1307906, at *5-6 (Bankr. N.D.N.Y. May 3, 2007); *In re Richards*, 1999 WL 14680, *7 (Bankr. E.D. Pa. Jan. 12, 1999).

Mr. Gibbs has extensive experience in his field and his testimony was generally credible. Mr. Gibbs conducted a thorough inspection of both the interior and the exterior of the Property. The photos included in Mr. Gibbs' report shows the Property needs significant repairs indoors and outdoors from the basement to the roof and the Property's mechanical systems were either inoperable or in disrepair.

The Court, however, does not accept Mr. Gibbs' conclusion that the presence of a three car garage and a driveway were not an asset to the Property, no matter the condition of

the garage structure. The ability to park cars off the street is valuable, as evidenced by the fact that Mr. Gibbs himself increased the value (by $400.00) of the one comparable property included in his appraisal that had a garage.

Although the garage is dilapidated and filled with debris, and the driveway is only partially paved, an occupant of the Property would be able to make use of the additional space even if the garage was demolished and the debris littering garage area were removed.

In determining the value to be assigned to the garage, the Court will look to the Gibbs report for guidance.

Mr. Gibbs' appraisal provides the Court with a method for determining the value of the garage. First, the appraisal included at least one property with a garage. For this property, Comparable Number 5 with a one car garage, Mr. Gibbs added $400 to the value of that property. Here, the Property includes a three-car garage, indicating added value to the Property of $1,200.

Accordingly, the Court will adjust Mr. Gibbs' appraisal of the Property upward by $1,200.00. The Court values the Property at $46,200.00.

### 3. Is there any equity securing the Defendant's judgment lien after the Debtor's $25,150.00 exemption and superior liens on the Property are accounted for?

The Defendant holds a judgment lien in the amount of $71,390.74. The amount of the liens senior to the Defendant's judgement is $36,885.88. The Debtor claims an exemption of $25,150.00. The senior liens on the Property together with the Debtor's exemption total $62,035.88  The value of debtor's interest in the Property is $46,200.00. With the property's value established at $46,200.00 and the senior liens and exemption at $62,035.88, there remains no equity to which the judgment lien may attach.

Accordingly, an order consistent with this Memorandum will be entered.

Dated: April 30, 2023

_____
Magdeline D. Coleman
Chief U.S. Bankruptcy Judge

Maggie S. Soboleski, Esquire
Center City Law Offices LLC
2705 Bainbridge Street
Philadelphia, PA 19146

Mark D. Pfeiffer, Esquire
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102