**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>    ANGELINO TIGREROS,<br><br>        Debtor. | Case No. 19-17665-MDC<br><br>Chapter 13 |
| ANGELINO TIGREROS,<br><br>        Plaintiff,<br><br>v.<br><br>ORIGEN CAPITAL INVESTMENTS III, LLC,<br><br>        Defendant. | Adv. Proc. No. 21-00015-MDC |

# **MEMORANDUM**

## I.   INTRODUCTION

Following a trial on February 28, 2022, (the "Trial"), this Court entered an Opinion and Order, dated April 30, 2023, ruling in favor of Angelino Tigreros (the "Plaintiff" or the "Debtor") in the above-captioned adversary proceeding (the "Adversary Action") against Origen Capital Investments (the "Defendant"). In the Adversary Action, the Plaintiff sought a determination, pursuant to 11 U.S.C. §506(a), of the value of the Defendant's secured claim in an amount that would strip in its entirety or significantly reduce the amount of the Defendant's lien on the Debtor's residence located at 534-536 West Rockland Street, Philadelphia, Pennsylvania 19120 (the "Property"). The Debtor argued that, based on an April 2021 valuation of the Property (the "2021 Valuation"), there was no equity in the Property to secure the judgement lien

1

of the Defendant. In its written opinion, this Court granted the Debtor's requested relief, finding that the value of the Property was $46,200.00 based upon the 2021 Valuation, subject to liens senior to the Defendant's totaling $36,885.88. Thereafter, because the Debtor claimed an exemption of $25,150.00, pursuant to §522(d)(1), the Court held there was no equity left to which the Defendant's lien could attach.

The Defendant appealed this Court's ruling to the United States District Court for the Eastern District of Pennsylvania (the "District Court"). The District Court concluded that, although this Court has broad discretion to choose a valuation date, the Court was required to provide a more thorough explanation for the date it chose. The District Court therefore remanded the matter to this Court so that it may supplement its prior written opinion. This Memorandum serves to clarify and explain the reasons for the valuation date selected by the Court.

## II.     DISCUSSION[1]

### A.     Under §506(a) the Purpose of the Valuation Drives the Date that the Property is Valued

Section 506(a) of the Bankruptcy Code does not provide a specific date on which the value of real property serving as collateral should be determined.[2] Rather, §506(a)(1) states that, for purposes of determining secured status, value "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). Thus, the plain language of the statute allows courts to adopt

---

[1] The factual and procedural background of the present dispute was set forth in the Memorandum dated April 30, 2023. The Court therefore will not recite it fully again here and will assume familiarity with the facts. The Court will limit its discussion to the facts and background relevant to the analysis of the legal issues as necessary.

[2] By contrast, §506(a)(2), provides that in a Chapter 7 or Chapter 13 bankruptcy case, the value of personal property securing an allowed claim shall be determined as of the date the bankruptcy petition was filed.

a flexible approach in determining *when* the valuation of collateral should occur. *See TD Bank, N.A. v. Landry*, 479 B.R. 1, 4 (D. Mass.2012) citing *In re Abdelgadir*, 455 B.R. 896, 902 (9th Cir. BAP 2011) (concluding that the timing of valuation must also be flexible) (emphasis added).

Courts have utilized a variety of approaches and methods in determining the relevant date for valuation under § 506(a). Many courts have held that the petition date is the applicable date for valuation. *See, e.g.*, *TD Bank, N.A. v. Landry (In re Landry)*, 479 B.R. 1, 7 (D. Mass . 2012) (concluding that the petition date should be used as the valuation date when determining whether a creditor's claim is entitled to certain statutory protections). Others have held that the confirmation date is the date that should be used. *See, e.g.*, *In re Williams*, 480 B.R. 813, 817 (Bankr. E.D. Tenn. 2012) (concluding that a confirmation date is the applicable date because valuations relative to plan confirmation should be conducted in the context of the present). Some courts have used the filing date of the plan. *See, e.g.*, *Matter of Willis*, 6 B.R. 555, 559 (Bankr. N.D.Ill. 1980) (concluding that the filing date of the plan is the applicable date for the purposes of a reaffirmation agreement in the absence of exceptional circumstances).

However, because plans are often modified, and as a practical matter, confirmation will often shortly follow the valuation determination, some courts have used the date the valuation motion was filed or the hearing date itself. *See In re Anderson*, 88 B.R. 877, 884 (Bankr. N.D. Ind. 1988); *In re Klein*, 10 B.R. 657 (Bankr.E.D.N.Y.1981) citing, *In re Jones*, 5 B.R. 736 (Bankr. E.D.Va.1980) (holding valuation should be on date proceedings calling for value of specific collateral are initiated). These courts' reasonings have varied but ultimately rest on the basis that confirmation will often shortly follow the valuation determination.

This latitude in approaches provide a bankruptcy court with the flexibility implicit in the statute to contemplate a valuation of the subject property at or near the time of litigation so that the Court can resolve the dispute with a complete factual basis. *Jones,* 5 B.R. at 739. In *In re Am. Kitchen Foods, Inc.,* 1976 WL 23699, 20 UCC Rep.Serv. 238 (D. Me. June 8, 1976), the Court noted, "consistency in collateral valuation does not mean that collateral will be assigned the same value throughout the proceedings as at their commencement, but merely that the most commercially reasonable disposition practicable in the circumstances should be the standard universally applicable in all cases and at every phase of each case." Furthermore, once a determination is made regarding the value of a claim, the Debtor can determine how that claim be treated in its case, including in their proposed plan. *See In re Stanley*, 185 B.R. 417, 423 (Bankr. D. Conn. 1995) (noting that a valuation hearing may be conducted for several purposes including to determine the how the value of a claim is to be treated under a proposed plan).

B. **Here the Purpose of the Valuation Was to Allow the Debtor to Know the Value of the Defendant's Secured Claim that Would Be Treated Under a Confirmed Plan**

Here, to understand "the purpose of the valuation and of the proposed disposition or use of such property," it is important to note the context in which the Debtor sought a valuation determination from this Court. On January 5, 2021, the Debtor filed his proposed fifth amended chapter 13 plan (the "Proposed Plan").[3] The Proposed Plan disclosed that it "limit[ed] the amount of [a] secured claim based on value of collateral," and "avoid[ed] a security interest or lien."[4] The Proposed Plan did not provide for the sale of the Property,[5]

---

[3] Bankr. Docket No. 83.

[4] *See* Proposed Plan, at Part 1.

[5] *See id.* at §2(c).

4

and therefore the Debtor proposed to retain the Property. The Proposed Plan provided for the payment of various claims secured by a lien on the Property,[6] but with respect to the Defendant's secured claim, the Debtor proposed to pay $2,500.00, with no interest, with the Defendant's remaining lien avoided.[7]

On February 18, 2021, the Defendant objected to the Proposed Plan (the "Plan Objection"),[8] arguing that its secured claim should be allowed in the full amount as filed, *i.e.,* $71,390.74, because the value of the Property was approximately $160,000.00 and the Debtor's own schedules disclosed secured claims of only $102,027.53.[9] On February 24, 2021, just six days after the Plan Objection was filed, Debtor initiated this Adversary Action seeking a determination of the value of the Property, and therefore of the Defendant's secured claim. It is therefore clear that (a) the purpose of the valuation was a determination of the Defendant's secured claim, so that the Debtor would know how much needed to be treated under the Proposed Plan, and (b) the valuation was to account for the Debtor's proposed disposition of the Property under the Plan, which was to retain it.[10] Once the determination of the Defendant's interest in the Property was made, the Debtor would be able to determine the treatment of the Defendant's secured claim in the Debtor's bankruptcy case.

    **C.**    **In Light of the Purpose of the Valuation, the Court Exercised its Discretion to Value the Property as of the Trial Date After Consideration of a Full Evidentiary Record, Including But Not Limited to the 2021 Valuation**

---

[6] *See id.* at §4(b).

[7] *See id.*, at §§4(c) and 9.

[8] Bankr. Docket No. 86.

[9] *See* Plan Objection, at ¶¶6, 11, 13. In support of its $160,000 valuation of the Property the Plan Objection cited an apparent valuation from the website redfin.com. *See id.* at ¶13, n.3.

[10] As stated in the Introduction to the Complaint, the Debtor filed the Adversary Action "to determine the value of the interest of the Defendant in the residential real estate and personal property of the Debtor and determine the amount of the alleged secured claim of the Defendant, Origen Capital Investments, III, LLC.", Adv. Docket No. 1.

Given that the purpose of the valuation was to determine the amount of the Defendant's secured claim to be treated under the Proposed Plan or a subsequent amended proposed plan, and that the Debtor intended to retain the Property, the Court made its assessment of the valuation as of the date of the Trial. The Court did so because a valuation as of that date would permit it to consider all available facts based upon the evidentiary record presented at Trial, including the 2021 Valuation and the appraiser's basis for making his valuation conclusion. The 2021 Valuation reflected the professional valuation analysis of the Property conducted closest in time to the Trial, and therefore aided the Court in arriving at its value *as of Trial* in order to determine the Defendant's secured claim for which the Debtor would need to propose treatment under a confirmed plan.

However, in considering the evidence presented at Trial, the Court made its valuation assessment based not only on the 2021 Valuation, but upon the full evidentiary record, including the 2018 valuation, as well as the testimony and comparative market sales analysis presented by the Defendant's expert witness. The evidence presented at the Trial established that the Property was in a distressed state that supported the 2021 Valuation, which, unlike the Defendant's comparative market sales analysis, accounted for that distressed state when arriving at its valuation. Furthermore, the Debtor's witness testified that two appraisals of the Property had been completed. The first appraisal was conducted prepetition in November 2018, approximately one month before the Debtor filed his bankruptcy, and the second appraisal was completed in April 2021 in preparation for Trial. Both appraisals were consistent in valuing the property at $45,000, taking into account a thorough inspection of the interior and the exterior of the Property.[11] The Court therefore concluded that, even if it

---

[11] February 28, 2022, Hearing Transcript, 51:3.

exercised its discretion to value the Property as of the Petition Date, its value would not have changed, because at both snapshots in time the Property was in a distressed state and was valued at approximately $45,000 (notwithstanding the Debtor having scheduled it as being worth $60,000 as of the petition date).

In determining that the evidence supported a value of $45,000 for the Property as of the Trial Date, based in large part on the 2021 Valuation, the Court rejected the Defendant's argument that the applicable date for valuation was the petition date in December 2019, more than a year before the commencement of the valuation dispute and potential confirmation of the Proposed Plan. The Defendant did not obtain an appraisal of the Property that accounted for its distressed state, but instead submitted a comparative market sales analysis completed by the Defendant's expert witness. Based on sales of neighboring properties alleged to be comparable to the Property, the Defendant's expert valued the Property between $105,000 and $120,000.[12] The evidence at Trial, however, established that the condition of the Property was severely distressed, yet the Defendant's expert valuation did not account for the impact of that condition on the Property's value. As such, the Defendant's expert witness based his valuation on what he asserted were comparable properties, but that methodology was of limited use to the Court in determining the Property's value given that it disregarded the actual condition of the Property. By contrast, the 2021 Valuation, the 2018 Valuation, and the Debtor's expert witness's testimony all accounted for the dilapidated state of the Property, both at the time the Debtor filed for bankruptcy and at the time of Trial. This evidence supported the Court's conclusion that, at the time of Trial, after which the Debtor would seek confirmation of a proposed plan under which he would retain the Property and

---

[12] The Court observes that this is a significant reduction from the $160,000 value alleged in the Defendant's Plan Objection.

treat the Defendant's secured claim, the Property's value was $46,200.00.

### III.   CONCLUSION

As discussed *supra,* the Court valued the Property as of the time of Trial, using both the 2021 Valuation, because it was the professional valuation closest in time to the Trial, as well as the full evidentiary record developed at Trial. The Court did so because valuation as of the time of Trial would allow the Debtor to proceed with proposing and seeking confirmation of a plan that treated the Defendant's secured claim based on the Property's value as of that date.

An order consistent with this Memorandum will be issued.

Dated: July 31, 2024

_____
Judge Magdeline D. Coleman
United States Bankruptcy Court